UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ALTRIC DAVISON,

      Plaintiff,

v.                                                Case No. 1:12-cv-273
                                                Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on February 6, 1952 (AR 128).[1] He alleged a disability onset date of October 23, 2002 (AR 133).[2] Plaintiff completed the 12th grade and had previous employment as a general contractor (AR 134, 139). He suffered a stroke in October 2002 and identified his disabling condition as heart problems ("my heart doesn't have any ejection factor"), labored breathing, problems with hearing, depression and memory loss (AR 133). Due to these conditions, plaintiff asserted that he runs out of breath with "even the littlest" physical activity, gets lightheaded, feels sick and cannot walk any distance (AR 133). On March 31, 2010, an ALJ reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 22-34). This decision, which was later

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The court notes that although plaintiff's alleged onset date is October 23, 2002, he did not file an application for DIB until September 7, 2007 (AR 22).

approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

The ALJ found that plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of

October 23, 2002, through his date last insured date of December 31, 2005 (AR 24). At step two, the ALJ found that through the date last insured, plaintiff suffered from the following combination of severe impairments: status post cerebral vascular accident; nonischemic cardiomyopathy; status post right shoulder surgical repair; obesity; mild obstructive pulmonary disease; hearing loss; mood disorder; anxiety disorder; and alcohol abuse (AR 24). At step three, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.00 (Musculoskeletal System), 3.00 (Respiratory System) and 12.00 (Mental Disorders) (AR 28).

The ALJ decided at the fourth step that through the date last insured, plaintiff had the residual functional capacity (RFC) to perform a range of light work as defined in 20 C.F.R. § 404.1567(b):

> he could lift and carry 20 pounds occasionally and 10 pounds frequently; he could sit 6 hours in an 8-hour workday and could stand and/or walk 6 hours in an 8-hour workday; he could not use ladders, ropes or scaffolds; he could occasionally reach with the right upper extremity; he could not work in an area with concentrated exposure to fumes, odors, dusts, gases or other respiratory irritants; he could not work in an areas [sic] with exposure to noise above a moderate level as defined in the Selected Characteristics of Occupations; he was limited to unskilled work with an SVP rating of 1 or 2 involving 1-2 step instructions; he could not perform jobs that required meeting production quotas, or those involving problem solving or independent decision making.

(AR 29). The ALJ further found that through the date last insured, plaintiff was unable to perform any past relevant work (AR 32).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 33). Specifically, plaintiff could perform the following jobs in the regional economy (lower peninsula of Michigan): light cleaner/housekeeper

(8,000 jobs); and cleaner/polisher (2,900 jobs) (AR 33). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 23, 2002 (the alleged onset date) through December 31, 2005 (the date last insured) (AR 33-34).

### III. ANALYSIS

Plaintiff has raised two issues on appeal.

#### A. There was not substantial evidence of the whole record to deny disability benefits.

Plaintiff's arguments with respect to substantial evidence address the ALJ's credibility determination.[3] Specifically, plaintiff contends that the ALJ had no legal rationale to find that he lacked credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will

---

[3] The court notes that plaintiff cites case law and Social Security Rulings which relate to an ALJ's RFC determination. *See* Plaintiff's Brief at pp. 18-19. However, plaintiff neither raises an error with respect to the ALJ's RFC determination nor explains how these cited materials relate to the ALJ's RFC determination in this case. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

5

not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Plaintiff alleged a disability onset date on October 23, 2002, with his last insured date for DIB being December 31, 2005. However, plaintiff did not file an application for DIB until September 7, 2007, almost five years after his alleged onset date and long after his last insured date (AR 22). Plaintiff testified about his condition at an administrative hearing held on March 17, 2010, more than four years after his last insured date (AR 41). The issue before the ALJ was whether plaintiff was disabled between October 23, 2002 and December 31, 2005 (AR 33). The ALJ found that while plaintiff was sincere, his testimony was not consistent with his condition as reflected in the relevant medical records (AR 30-31).

The gist of plaintiff's argument is that the ALJ provided only a "boilerplate" credibility evaluation which was not based on the entire record. Plaintiff's Brief at pp. 16-17. The court disagrees. Contrary to plaintiff's contention, the ALJ evaluated his credibility in considerable detail (as reproduced below):

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

6

>       The claimant alleged inability due to a variety of maladies, including those cardiac, orthopedic, pulmonary and psychologically related. The claimant averred poor stamina, easy fatigue and shortness of breath with limited exertion. The claimant reported instances of dizziness and lightheadedness and, over the last few years, arthritic pain. The claimant also contended to experience periodically depressed and anxious mood with impaired thinking. The claimant indicated that his symptoms were aggravated by many physical activities and respiratory irritants and only partially alleviated with medication. According to the claimant, his conditions limited his ability to lift, walk, kneel, squat, climb, remember, concentrate, comprehend complicated instructions or persist on tasks. Julie Davison, the claimant's wife, reiterated some of her husband's testimony with respect to his activities and limitations. Ms. Davison indicated that the claimant had significant difficulties in the aftermath of his stroke and he tended to take things out of context. Mrs. Davison provided that the claimant had always been a hard worker and had trouble accepting his limitations, feeling he was a burden on others.
>
>       The testimony furnished was sincere, but was not reliable in accurately reconstructing the period at issue. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
>       Specifically, during the pertinent period, no physician imposed a work preclusive limitation on the claimant's functioning, or opined that he was totally disabled or had greater restriction that those include[d] in the residual functional capacity adopted. The undersigned notes the results of MRI, CT, EKG, radiographic, echocardiogram, Doppler, and clinical evaluations which did not unveil totally debilitating pathology. Through December 2005, the record demonstrates that the [claimant] made rather prompt and significant recoveries from his serious health problems. Within a short time of the incident, clinicians viewed the claimant to be essentially symptom free as related to his stroke. He did not manifest persistent disorganization of motor function; persistent paresthesias or aphasia; notable disturbance of gait, station or dexterous movements. Moreover, during the pertinent interval, objective work ups reflected the claimant to have largely stable heart status with good exercise tolerance and quiescent cardiac sequelae. As discussed previously, the claimant realized good benefit from surgical repair of his right shoulder. The claimant does have some history of hearing loss. However, the claimant speaks well and does not exhibit significant communication difficulties. The claimant did perform successful work activity for an extended interval with his hearing capabilities.

(AR 30-31).

The ALJ's credibility determination is supported by the medical records generated between October 23, 2002 and December 31, 2005. In November 2002, plaintiff's cardiologist R. Voice, M.D., noted that plaintiff's heart condition was stable, doing well and classified as New York Heart Association Class II (i.e., a slight limitation of physical activity; shortness of breath, fatigue, or heart palpitations with ordinary physical activity, but patients are comfortable at rest) (AR 26, 261).[4] In February 2003, plaintiff's cardiologist E. Choo, M.D., noted that clinically, plaintiff's cardiac status was stable and that he "appears to have suffered a transient cerebral ischemia, for which he has fully recovered" (AR 26, 271-2). In July 2003, Dr. Choo noted that while a recent echocardiogram disclosed "at least moderate left ventricular systolic impairment, but without evidence of significant valvular abnormalities" (AR 267). Plaintiff was doing well and had no evidence of functional limitation in performing daily activities and no symptoms suggestive of heart failure or syncope (AR 26, 267).

In August 2003, Family Medicine of Michigan reported that plaintiff was "feeling strong again" and had recently been pouring concrete without difficulty (AR 26, 452). Stress echocardiography analysis in February 2004 gave results within normal limits (AR 26, 265). In October 2004, plaintiff reported dropping a log on his right big toe, but x-rays revealed no fracture (AR 27, 411, 413). On July 14, 2005, during an examination of a lump on his right thigh, the treater (Matthew J. Zimmie, M.D.) noted that plaintiff had normal mental and physical functioning (e.g., plaintiff was correctly oriented with normal mood and memory functions, his heart sounds were benign, he ambulated normally without an assistive device, his muscle strength was graded as "5/5",

---

[4] *See Hickman v. Apfel*, No. Civ. A 99-2365, 2000 WL 322783 at *4 fn. 4 (E.D. La. March 28, 2000) (listing the classifications developed by the New York Heart Association to grade congestive heart failure by severity of symptoms).

and his limbs were fully mobile without edema, atrophy or inflammatory changes) (AR 27, 388-94). On August 6, 2005, plaintiff was seen at an emergency room after a motor vehicle accident in which he suffered some injuries to his face and leg and lost consciousness (AR 27, 275-82). A CT scan of the head showed no acute changes (AR 277). Plaintiff was released and walked out of the emergency room with no evidence of an injury (AR 276). A later review of the CT scan revealed a non-depressed fracture of the left parietal bone (AR 276). Plaintiff's family was given instructions for follow-up with the emergency room but there is no further record that plaintiff returned to the hospital (AR 282). On January 4, 2006, a few days after his last insured date of December 31, 2005, plaintiff was diagnosed with alcohol abuse (AR 27, 364).

Substantial evidence supports the ALJ's credibility determination. There is no compelling reason for this court to disturb that determination. *Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim of error should be denied.

> **B.  The Social Security Administration's reasons for rejecting the opinion of Dr. Eric Smith, treating doctor, is not based on substantial evidence. This was evidence submitted after the hearing so the ALJ did not have the report from his retired doctor, David J. Smith, M.D.**

Plaintiff does not address the ALJ's review of Eric Smith, M.D.'s opinions. Rather, plaintiff states that he was treated by David J. Smith, M.D., who retired in 2007 when his son, Eric Smith, M.D., took over the practice. Plaintiff's Brief at p. 6.[5] Now, plaintiff wants the court to examine new evidence, in the form of a letter from Dr. David J. Smith, which was not presented to the ALJ. Plaintiff did not include a copy or this letter with his brief nor did he cite the location

---

[5] The court notes that the ALJ's decision does not refer to any opinions issued by Dr. Eric Smith (AR 22-34). This is not surprising, since Dr. Eric Smith did not take over his father's practice until 2007, more than one year after the relevant time period for plaintiff's DIB claim.

of this letter in the administrative record. Defendant identified the letter as part of the new evidence submitted to the Appeals Council (AR 12, 727-29). Defendant's Brief at pp. 14-15. This letter is dated May 24, 2010, nearly two months after the ALJ's decision denying benefits (AR 729).

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v.*

10

*Halter*, 279 F.3d 348, 357 (6th Cir. 2001). To show good cause a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir. 2012).

Here, plaintiff contends that Dr. David J. Smith was retired and unavailable, and that "[h]e only agreed to submit the letter after the unfavorable decision." Plaintiff's Brief at p. 21. Plaintiff has failed to show good cause for failing to obtain this evidence. There is no evidence to support plaintiff's assertion that Dr. David Smith was unavailable to provide an opinion prior to the administrative hearing. In addition, the doctor's letter does not cite any particular medical records in support of his opinion, but simply provides a narrative with the stated intent to "clarify issues" which the ALJ had decided (AR 729). Plaintiff cannot submit Dr. David Smith's opinion as "new" evidence to "clarify issues" resolved in the unfavorable administrative decision. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (in denying the plaintiff's request for a sentence-six remand, in which the plaintiff sought to add new evidence in the form of a medical opinion that critiqued the ALJ's decision, the court held that there was not "good cause" for a remand, because allowing this opinion "would amount to automatic permission to supplement the administrative records with new evidence after the ALJ issues a decision in the case, which would seriously undermine the regularity of the administrative process"). Accordingly, plaintiff is not entitled to a sentence-six remand in this matter.

## IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated: June 3, 2013                                   /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).